**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

BENITO M.,

          Plaintiff,

   v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

Case No. 20 C 5966

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Benito M.[1] seeks judicial review of the final decision of the Acting Commissioner of Social Security denying his application for child's insurance benefits and supplemental security income. Benito asks the Court to reverse and remand the administrative law judge's ("ALJ") decision, and the Commissioner moves for its affirmance. For the following reasons, the Court affirms the ALJ's decision.

## BACKGROUND

Benito was born on May 28, 1998. Benito is a now young man who was recently enrolled in a school for individuals who need assistance transitioning into adulthood. (R. 90-97, 483-484). On September 5, 2017, Benito applied for child's insurance benefits[2] and supplemental security income at age 19, alleging disability since June 20, 2017 due to executive functioning disorder, central auditory processing disorder, dyslexia, language processing disorder, sensory integration dysfunction, attention deficit hyperactivity disorder, speech articulation problems, asthma,

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

[2] These benefits are available if the claimant is 18 years old or older and has a disability that began before attaining the age of 22. 20 C.F.R. § 404.350(a)(5).

anxiety, and depression. *Id.* at 130-131. Benito has no past relevant work history, but he did work as a seasonal camp counselor, and he also interned at a book bank, at a senior center, at a food pantry, and at a children's center. *Id.* at 492, 896. Benito's symptoms are primarily treated with psychiatric medication and individual counseling at the University of Chicago. *Id.* at 716, 893.

On September 3, 2019, the ALJ issued a decision denying Benito's application for disability benefits and social security income. (R. 20-33). The opinion followed the required five-step evaluation process. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At step one, the ALJ found that Benito had not engaged in substantial gainful activity since June 20, 2017, the alleged onset date. *Id.* at 23. At step two, the ALJ found that Benito had the severe impairments of ADHD, multiple learning disorders, adjustment disorder, dysthymic disorder, major depression disorder, oppositional defiance disorder, social anxiety disorder, central auditory processing disorder, sensory integration dysfunction, developmental coordination disorder, and a speech sound disorder. *Id.* at 23. At step three, the ALJ determined that Benito did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). *Id.* at 24.

The ALJ then concluded that Benito retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with limitations. The ALJ's limitations include simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements with simple work-related decisions, and few, if any, workplace changes. *Id.* at 27. Further, Benito can never interact with the public, and he can tolerate only brief and superficial interaction with co-workers and supervisors. *Id.* at 27. As a result of the RFC finding, the ALJ determined at step four that Benito did not have any past relevant work. *Id.* at 31. However, at

step 5 the ALJ found that considering Benito's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that

Benito can perform, such as: laundry laborer, meat trimmer, and wharf worker. *Id.* at 31-32.

Because of this determination, the ALJ found that Benito was not disabled. *Id.* at 32. The Appeals

Council denied Benito's request for review on August 5, 2020, leaving the ALJ's decision as the

final decision of the Commissioner. *Id.* at 1; *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020).

## **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether

a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently

unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's

impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt.

P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5)

whether the claimant is unable to perform any other available work in light of her age, education,

and work experience. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *Young v. Sec'y of*

*Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160,

162 (7th Cir. 1985). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4); 20

C.F.R. § 416.920(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5,

to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends

the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Furthermore, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the" ALJ's. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Nonetheless, where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of his request for reversal and remand, Benito makes two arguments:[3] (1) the ALJ's mental RFC assessment lacks substantial support; and (2) the ALJ erred in his subjective symptom evaluation. Because the ALJ's decision is supported by more than a mere scintilla of evidence and a reasonable mind can accept this evidence as adequate to support the conclusion, the Court affirms.

A.     RFC

Benito makes a number of arguments regarding the ALJ's RFC assessment. The RFC is "the most a person can do in a work setting despite the person's limitations." *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) (citing 20 C.F.R. § 404.1545(a)(1)). In an RFC assessment, "an ALJ must include all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). As further discussed below, each of Benito's arguments fails to raise a reversible issue.

---

[3] Prior to this opinion, Benito withdrew a constitutional argument made in his briefing. Doc. [28] at 7-8.

### 1. Evidentiary Deficit

First, Benito argues that the ALJ did not substantially support his RFC findings because he discounted all opinion evidence, resulting in an evidentiary deficit. Generally, an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" in determining a claimant's RFC. *Whitehead v. Saul*, 841 F. App'x 976, 982 (7th Cir. 2020). Ultimately, the ALJ bears "final responsibility" for determining a claimant's RFC, *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021), and "[a]n ALJ adequately supports his RFC determination when he 'consider[s] all limitations supported by [the] record evidence' and 'tie[s] the record evidence to the limitations included in the RFC finding.'" *Vang v. Saul*, 805 F. App'x 398, 401-02 (7th Cir. 2020) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019)); *see also Lyn P. v. Saul*, No. 19 C 1596, 2021 WL 2823089, at *7 (N.D. Ill. July 7, 2021) (finding that the ALJ sufficiently determined Plaintiff's RFC based on the evidence in the record, including medical evidence, diagnostic imaging, stage agency examinations and reports, and Plaintiff's own testimony and self-reports).

Under some circumstances, an evidentiary deficit can occur if an ALJ rejects each record opinion indicating functional limitations. For example, in the case cited by Benito, *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010), the ALJ discredited the RFC opinions of both the state agency physician and the claimant's treating physician. *Id.* at 688. As a result, the only other relevant medical opinion left to the ALJ in *Suide* was that of a third doctor, whom the ALJ did not discuss, and whose untimely opinion did not include a functional assessment of the claimant's abilities. *Id.* at 690. On appeal, both parties argued about the soundness of the ALJ's decision to discount the claimant's treating physician. *Id.* at 689. The Seventh Circuit remanded the decision of the ALJ, holding that it was not the ALJ's evaluation of the claimant's treating physician that required remand, but rather "the evidentiary deficit left by the ALJ's rejection of his reports[.]" *Id.* at 689-

5

90. According to the *Suide* Court, "[t]he rest of the record simply [did] not support the parameters included in the ALJ's residual functional capacity determination, such as an ability to 'stand or walk for six hours' in a typical work day." *Id.* at 690. The Seventh Circuit therefore held that the ALJ's RFC determination was not supported by substantial evidence. *Id.* Importantly, however, the Seventh Circuit in *Suide* "never created a bright-line rule that rejection of physician opinion evidence automatically means the ALJ's decision is unsupported by substantial evidence. Remand was required in *Suide* because the rejection of the physician's medical opinion left the ALJ's RFC determination untethered to any record evidence. And an ALJ is certainly prohibited from 'playing doctor' by filling in evidentiary gaps in the record with his own lay opinion." *Herren v. Saul*, No. 20-CV-156, 2021 WL 1192394, at *5 (E.D. Wis. Mar. 30, 2021).

In the present case, the ALJ found that the state agency psychological consultants' opinions were moderately persuasive, and that his treating physician, Dr. Connett's, medical opinion was less persuasive. The state agency psychological consultants found that Benito was moderately limited in his ability to understand and remember detailed instructions, moderately limited in his ability to sustain concentration and persistence, and moderately limited in his social interactions. (R. 170-171). Further, the state agency consultants found that Benito's physical conditions were non severe, and therefore their findings were solely based on Benito's mental limitations. *Id.* at 172. Consequently, the state agency consultants found that Benito has the capacity to perform jobs with multiple step tasks and normal or low social demands, which include the occupations of dining room attendant, service attendant, and amusement park worker. (R. 141, 153, 171, 189). The ALJ found the state agency psychologists' opinions moderately persuasive because he found that Benito is much more restricted, and, as a result, he cannot sustain a job with multistep tasks and normal or low social demands *Id.* at 30; *see Burmester,* 920 F.3d at 510 (finding that an ALJ's

RFC that is more limiting than that of any state agency doctor or psychologist, illustrates reasoned consideration given to the evidence). Moreover, Benito's treating physician, Dr. Connett, wrote, in a three-sentence letter, that Benito has a cognitive disorder that is permanent and totally disabling such that it prevents him from serving on a jury. (R. 1283). The ALJ found Dr. Connett's statement less persuasive than the state agency psychologists' opinions because it was ambiguous and did not easily translate into specific work-related limitations. *Id.* at 31. Additionally, the ALJ stated that the Dr. Connett's statement was inconsistent with the objective evidence. The ALJ reasonably found Dr. Connett's statement not persuasive because she did not provide any medical opinions regarding specific functional limitations related to Benito's impairments. *Suide*, 371 F. App'x at 690 (doctor's "evaluation did not include a *functional* assessment of [claimant's] abilities, nor did she opine about any limitations [claimant' s] impairments may have caused, so her report could not be used to support specific limitations included in [claimant's] residual functional capacity."); *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996) ("[g]iven that Dr. Lloyd failed to venture an opinion as to the extent of Books's limitations or as to his residual capabilities, the evidentiary usefulness of his findings is slight, at best."). Moreover, Dr. Connett's statement that Benito is totally disabled is an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i). In sum, the ALJ did not reject all medical opinions in crafting the RFC -- he found the state agency psychologists' opinions moderately persuasive and Dr. Connett's less persuasive, and thus, he did not fill any evidentiary gaps with his own opinion. *See McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 881 (N.D. Ill. 2018) (finding "no evidentiary deficit" where the ALJ partially relies on agency consultants' opinions but incorporates additional limitations).

Furthermore, in addition to the ALJ's evaluation of the opinion evidence, the ALJ tethered the record to his RFC findings with more than a mere scintilla of evidence to determine Benito's

7

RFC. First, the ALJ considered Benito's testimony that he participated in a training program where he learned how to shop for groceries, manage a checkbook, and talk to employers. (R. 28). He also noted that Benito generally got along with the other young adults in the program but acknowledged that Benito continued to experience significant social anxiety that made leaving his house difficult at times. *Id.* The ALJ then considered Benito's difficulty reading due to dyslexia, his depression, and his anxiety. *Id.* He also considered Benito's mother's testimony that Benito is easily overwhelmed and has difficulty responding to changes or independently managing his daily activities. The ALJ then considered Benito's mother's testimony that he cannot maintain regular employment due to his combined mental impairments. *Id.*

Next, the ALJ considered that Benito treated with medication for his anxiety and mood problems. *Id.* The ALJ also considered an examination where Benito displayed some difficulty with aspects of executive function, including problems responding to changes. *Id.* At that same examination, it was noted that Benito had an articulation deficit and difficulty with using language in a grammatically correct way, but also demonstrated cooperative behavior, excellent social communication skills, good listening comprehension skills, average reading comprehension skills, and average expressive and receptive language skills. *Id.* Further, the ALJ considered that Benito was capable of adequately maintaining focus in small class settings. *Id.* The ALJ then considered that Benito had some attendance problems in his transition program in 2017 due to his anxiety. *Id.* However, at the program, Benito was described as respectful and capable of following instructions. *Id.*

Furthermore, the ALJ considered Benito's 2014 neuropsychological evaluation which noted that Benito was undergoing treatment for depression and anxiety. *Id.* The evaluation also reported that Benito had difficulty with social interactions but was still capable of making friends.

*Id.* The evaluation also noted that Benito displayed fleeing eye contact, articulation errors, a flat affect, and repetitive behaviors. *Id.* Nevertheless, the evaluation also stated that Benito was cooperative and engaged with the ability to persist on all tasks, had adequate receptive language skills, and good insight. *Id*. at 29. The ALJ also considered an intelligence test Benito underwent where he was diagnosed with learning disorders, major depressive disorder, anxiety disorder, attention deficit hyperactivity disorder, a developmental coordination disorder, a central auditory processing disorder, sensory integration dysfunction, and a speech sound disorder. *Id.*

Next, the ALJ considered Benito's May 2016 hospitalization due to depression and suicidal ideation. *Id.* He noted that Benito demonstrated a restricted effect on examination, but was cooperative with a logical thought process, normal psychomotor activity, and fair judgment. *Id.* The ALJ noted that Benito was diagnosed with major depressive disorder at that hospital visit and that he began psychiatric treatment. *Id.* Then the ALJ considered that Benito reported occasionally feeling overwhelmed with schoolwork and described suicidal ideation at his psychiatric appointments. *Id.* He also noted that on examination at his psychiatric appointments, Benito generally exhibited an articulation difficulty, but had a euthymic mood, full affect, fair eye contact, and linear thoughts. *Id.*

Moreover, the ALJ considered that Benito's psychiatric appointments were somewhat effective at treating his mental functioning and psychological symptoms in 2016 and 2017. *Id.* The ALJ also noted that Benito received ongoing psychotropic medications. *Id.* The ALJ mentioned that Benito complained of racing thoughts, social anxiety, depression, social withdrawal, suicidal ideation and sometimes demonstrated a flat effect at his psychiatric appointments. *Id.* The ALJ also considered that Benito often noted that he was doing relatively well with school and peer interactions. *Id.* The ALJ noted that Benito at times denied having any significant depressive or

9

anxiety-related symptoms and indicated that he worked at a camp during the summer months and went to the amusement park with friends. *Id.* Further, the ALJ noted that Benito was generally cooperative, attentive, and easily engageable with fair eye contact, had normal concentration, a full affect, a normal memory, and a linear thought process on examination. *Id.* The ALJ also considered that his medication regimen remained relatively unchanged. *Id.*

Next, the ALJ considered Benito's 2018 consultive psychological examination with Dr. Kieffer. *Id.* The ALJ noted that Benito complained of depression, difficulty sleeping, irritability, and anxiety. *Id.* Benito also reported that he relied on his mother for most daily activities, but also indicated that he was capable of dressing himself and was responsible for his personal hygiene. *Id.* Further, the ALJ noted that upon examination, the claimant had some difficulty maintaining concentration or attention, performing arithmetic, and performing abstract conceptual reasoning, however, he was cooperative and articulate with a good fund of information, the ability to recount national news events, good social judgment, and the ability to perform serial sevens. *Id.* The ALJ noted that Benito was diagnosed with attention deficit hyperactivity disorder, multiple learning disabilities, and major depressive disorder. *Id.*

Finally, the ALJ considered that Benito continued to receive psychiatric treatment during the first half of 2018 where he occasionally described ongoing suicidal ideation, irritability, or anxiety. *Id.* at 29-30. However, the ALJ noted that Benito continued to report that his medication was improving his psychological symptoms and he often denied having any significant mood problems or panic attacks. *Id.* at 30. The ALJ then noted that Benito's examinations still regularly demonstrated cooperative behavior, normal eye contact, a euthymic mood, a full affect, fair eye contact, and linear thoughts. *Id.* Additionally, the ALJ considered that Benito was capable of going out in public and serving as an usher at a wedding. *Id.* The ALJ also noted that Benito did not seek

any significant treatment for his mental impairments during the second half of 2018 or early 2019. *Id.* In conclusion, the ALJ stated that, based on the record, Benito does not have any severe physical impairment but has some significant mental impairments which provide a basis for restricting his mental and social abilities. *Id.* at 31. Specifically, the ALJ stated that Benito's mental impairments provide a basis for limiting him to simple, routine, and repetitive tasks involving no fast-paced production requirements, only simple work-related decisions, few workplace changes, and limited social interaction. *Id.* All in all, although the ALJ did not fully adopt any medical opinion, he appropriately weighed them and tied the record evidence to the limitations included in the RFC finding. Thus, no evidentiary deficit was created. [4]

### 2. Other RFC Arguments

Benito moves on to a series of additional arguments regarding the ALJ's RFC findings. First, Benito argues that the ALJ's RFC finding is not well reasoned because the ALJ cited mixed mental findings. Doc. [28] at 9. As an example, Benito cites to the ALJ's assessment of Dr. Kieffer's examination. Regarding Dr. Kieffer's examination, the ALJ noted that Benito had difficulty maintaining concentration or attention, performing arithmetic, and performing abstract conceptual reasoning, however, he was cooperative and articulate with a good fund of information, the ability to recount national news events, good social judgment, and the ability to perform serial sevens. (R. 29). Benito claims that the ALJ did not explain why he perceived certain findings,

---

[4] Benito also argues that the ALJ impermissibly constructed a middle ground RFC between the opinions of the agency psychologists and Dr. Connett's opinion with no basis in the record. Doc. [28] at 8-9. An "ALJ cannot reject all the relevant medical RFC opinions and then construct a middle ground and come up with [his] own physical RFC assessment without logically connecting the evidence to the RFC findings." *Mark J. v. Saul*, No. 18 C 8479, 2020 WL 374676, at *5. For the reasons stated earlier, Dr. Connett's statement cannot be used to support specific limitations, and more importantly, the ALJ more than minimally articulated his RFC analysis, he tied the record evidence to the limitations included in the RFC, and he did not reject all the medical opinions. Thus, this is not a case where the ALJ constructed a middle ground RFC.

such as Benito's ability to cooperate, as medically more significant, than other findings, such as

Benito's concentration deficits. Doc. [28] at 9. To start, the ALJ did not state that he placed greater

significance on Benito's cooperation versus his difficulty concentrating. Further, Benito is really

asking the Court to reweigh the ALJ's evaluation of Dr. Kieffer's examination, which the Court

will not do. *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (rejecting claimant's criticism

of the "ALJ's analysis of her daily functioning, her good and bad days, and her pain" as improperly

inviting the Court to reweigh the evidence). The ALJ properly weighed Dr. Kieffer's examination.

Second, Benito argues that the ALJ did not reconcile Dr. Kieffer's finding of a marked

limitation in concentration with the ALJ's finding of a moderate limitation in concentration. In

his decision, the ALJ considered both that Benito exhibited normal concentration at times and

difficulty concentrating at other times, including at Dr. Kieffer's examination. (R. 29). Because

there is conflicting evidence in the record, it was within the ALJ's discretion to find that Benito

was moderately limited in his ability to concentrate. *Weber v. Kijakazi*, No. 20-2990, 2021 WL

3671235, at *4 (7th Cir. Aug. 19, 2021) ("Weighing conflicting evidence is exactly what the ALJ

was required to do in assessing [a claimant's] disability claim."). Consequently, under the limited

scope of review the Court concludes that the ALJ's finding of a moderate limitation in

concentration is supported by substantial evidence.

Third, Benito suggests that the ALJ should have requested an agency specialist or medical

expert to assess updated evidence and provide an opinion or assessment of Benito's mental

functioning capacity. Doc. [28] at 10. When there is "insufficient evidence to determine whether

[the claimant is] disabled," the ALJ may recontact a medical source, request additional existing

evidence, order a consultative examination, or ask the claimant or others for more information. 20

C.F.R. § 404.1520b(b)(2). Evidence is "insufficient when it does not contain all the information

need[ed] to make" a determination or decision. *Id.* An ALJ's decision to call a medical expert to testify is also discretionary. 20 C.F.R. § 404.1513a(b)(2) ("Administrative law judges may [ ] ask for medical evidence from expert medical sources."). Here, Benito's argument is underdeveloped. It is unclear what updated evidence he believes needs additional assessment. Nonetheless, considering the ALJ's RFC analysis outlined earlier in this opinion, the record contained sufficient evidence regarding Benito's mental functioning to permit the ALJ to make a determination regarding his mental limitations, and, therefore, the ALJ properly exercised his discretion not to recontact any of the agency specialist or have a medical expert testify at the hearing. Ultimately, it was Benito's burden, not the ALJ's, to produce evidence that supports his claims of disability. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

Fourth, Benito contends that the ALJ selectively considered the evidence. Doc. [28] at 10-11. An ALJ is not permitted to "cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010). Benito provides three examples of cherry-picking. First, Benito argues that the ALJ characterized his suicidal ideation as "occasional." To the contrary, the ALJ considered Benito's suicidal ideation several times in his decision. The ALJ considered that Benito was hospitalized in 2016 due to severe depression and suicidal ideation. (R. 29). Further, the ALJ noted that Benito reported intermittent suicidal ideation at his initial psychiatric evaluations. *Id.* Moreover, the ALJ considered that Benito continued to complain of suicidal ideation at his psychiatric appointments during the second half of 2016 and in 2017. *Id.* Finally, the ALJ considered that Benito continued to describe ongoing suicidal ideation in 2018. *Id.* at 29-30. Thus, ALJ did not cherry-pick the evidence of Benito's suicidal ideation in the record. Second, Benito argues that the ALJ improperly noted that he was capable of working at a camp without considering that he was sent

13

home from camp because of self-harming behavior. Doc. [28] at 11. The ALJ did not state that Benito had the ability to sustain employment at a camp; instead, the ALJ simply noted that Benito indicated that he was capable of working at a camp. (R. 29). Furthermore, the record shows that Benito successfully returned and completed his time at camp even after the single self-harming incident. *See* (R. 793, 796, 802). Third, Benito argues that the ALJ considered Benito's testimony that he was doing relatively well in school without noting that he had an absenteeism problem. Again, contrary to Benito's allegation, the ALJ did consider his attendance issues at school. The ALJ considered that Benito was in an adult transition program but struggled with his attendance. (R. 28). Further, the ALJ noted that Benito reported difficulty leaving home due to significant social anxiety. *Id.* In sum, the ALJ did not cherry-pick facts or ignore evidence.

Fifth, Benito argues that the ALJ failed to properly assess Benito's limitations with concentration, persistence, or pace. Doc. [28] at 11-12. Specifically, Benito contends that the ALJ's finding of a moderate limitation with concentration, persistence, or pace was inconsistent with the ALJ's RFC of "simple work that was not fast paced." *Id.* CPP "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of task commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C(3) (2016). An ALJ need not use the specific words "concentration, persistence, and pace," so long as he accounts for the totality of the claimant's limitations in the RFC. *Morrison v. Saul*, 806 F. App'x 469, 473–74 (7th Cir. 2020); *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). Generally, employing terms like simple, repetitive tasks in the RFC on their own is insufficient to present the claimant's limitations in CPP. *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2020).

Here, Benito misstates the CPP restrictions the ALJ found in the RFC. Benito claims that the ALJ limited him to "simple work that was not fast paced." Doc. [28] at 11. However, the

ALJ's mental CPP restrictions state that Benito is limited to simple, routine, and repetitive tasks involving no fast-paced production requirements, only simple work-related decisions, and few workplace changes. (R. 27). Furthermore, the ALJ specifically stated that the CPP limitations he found account for Benito's concentration deficits. *Id.* at 25, 30; *see Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) ("A moderate rating in maintaining concentration, persistence, and pace means the claimant is so limited in *at least one of* those areas, not necessarily all three."). Therefore, the ALJ adequately accounted for the only CPP deficits that the ALJ found were supported by the record. *See Morrison*, 806 F. App'x at 473 (affirming an RFC limitation of "simple and detailed, one to five step instructions" where the ALJ determined that it "adequately accounted for the only deficits in concentration, persistence, and pace that the ALJ found supported by the record."). Moreover, Benito does not offer any additional restrictions that he believes should be included in the RFC. *See Recha v. Saul*, 843 F. App'x 1, 5 (7th Cir. 2021) (finding that the claimant did "not provided any other credible medical evidence indicating that his symptoms required additional RFC restrictions to account for CPP limitations beyond those included in the ALJ's decision."). Thus, the ALJ properly assessed Benito's CPP limitations and nothing more is required in the RFC.

Relatedly, Benito argues that the ALJ's RFC finding of no interaction with the public and only brief and superficial interaction with co-workers and supervisors was insufficient, given the ALJ's finding of a moderate limitation in interacting with others. While Benito frames this as a substantial evidence argument, he is really asking the Court to (impermissibly) reweigh the evidence. Benito lists evidence he believes the ALJ should have considered. For example, Benito points out that he has difficulty accepting when he does not agree with others and that when in school, he required a "go-to" person for support. Doc. [28] at 13. In his evaluation of Benito's

15

social limitations, the ALJ did consider Benito's mother's testimony that his mental health conditions affect his ability to get along with others. (R. 25). The ALJ also considered that Benito suffers from significant social anxiety *Id.* at 28. The ALJ further noted that Benito exhibits excellent social communication skills. *Id*. at 28. While the ALJ did not specifically mention that Benito once had a go-to person, an ALJ is not required to discuss "every piece of evidence in the record." *Wright v. Kijakazi*, 2021 WL 3832347, at *5 (7th Cir. 2021). With the above evidence, the ALJ sufficiently supported his social interaction limitations in the RFC. Therefore, the ALJ's RFC as whole is supported by more than a mere scintilla of evidence.

### B.        Subjective Symptom Assessment

Turning to Benito's next challenge, he argues that the ALJ made errors in his subjective symptom analysis. When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "An ALJ need not discuss every detail in the record as it relates to every factor," but an ALJ may not ignore an entire line of evidence contrary to her ruling. *Grotts,* 27 F.4th at 1278. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Id.* at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

16

First, Benito argues that the ALJ undermined his symptoms based on his failure to pursue a more aggressive treatment course in 2018. Doc. [28] at 13. Benito further contends that the ALJ had a duty to assess the underlying reasons for his course of treatment before drawing an adverse inference. *Id*. at 14. However, Benito misstates the ALJ's analysis of his course of treatment. The ALJ noted that the record did not show that Benito sought any significant treatment for his mental impairments in the second half of 2018 or early 2019. (R. 30). Furthermore, the ALJ noted that Benito's allegations of significant limitations due to his mental impairments are not entirely consistent with his course of treatment and statements to medical providers. *Id.* Thus, the ALJ reasoned, that if Benito is as limited by his mental impairments as he alleged in his application, it is reasonable to assume that Benito could have found his symptoms severe enough to warrant more aggressive and consistent treatment during the alleged period of disability. *Id.* The ALJ was not suggesting that more aggressive treatment was necessary or that the type of treatment Benito received was conservative. *Cf. Thomas v. Colvin,* No. 13 C 3686, 2015 WL 515240, at *4 (N.D. Ill. Feb. 6, 2015) (finding that the ALJ failed to identity what aggressive treatments would have been appropriate where the ALJ stated that the claimant's treatment was conservative). Here, the ALJ's focus is on Benito's scant medical treatment starting in the second half of 2018.

An ALJ may consider infrequent treatment in support of an adverse credibility finding where the claimant does not have a good reason for the infrequency of treatment. *See Primm v. Saul*, 789 F. App'x 539, 545–46 (7th Cir. 2019); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("The claimant's 'good reasons' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects."). However, the ALJ "must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical

17

care." SSR 96-7P (S.S.A. July 2, 1996); *Craft*, 539 F.3d at 678–79.  Put another way, an ALJ is not required to ask a claimant about the failure to seek treatment, but the ALJ is required to consider possible reasons for the failure to seek treatment. *Deborah,* 994 F.3d at 790.  Benito argues that the ALJ did not consider two explanations for his lack of treatment.  First, Benito's mother's testimony that Benito was too traumatized by the self-harm incident at camp to continue treatment. Doc. [28] at 14.  Second, Benito's testimony that he was too anxious about having to explain to his providers why he had lapsed in his treatment and too anxious to meet new providers. *Id*.  Contrary to Benito's claims, at the hearing, his mother only speculated that Benito had been too traumatized to seek medical care, but even so, the record shows that Benito attended numerous doctor visits after the 2017 camp incident. *See* (R. 796, 798, 802, 803, 804, 845, 858, 863, 1034, 1039, 1062, 1070, 1074, 1087, 1091, 1095).  Next, at the hearing, Benito testified that he had not returned to his primary care provider because it was difficult for him to explain why he had been gone for months. (R. 103).  Further, Benito explained that it would be difficult for him to go to a new doctor who does not know his medical history. *Id.*  It is unclear from the record if Benito stopped treatment due to his anxiety as he alleges.  Yet, while the ALJ did not consider Benito's anxiety as a direct reason for Benito's lack of treatment, as noted earlier in the opinion, the ALJ did consider Benito's general and social anxiety.  Nevertheless, the ALJ's credibility determination and analysis of a claimant's allegations does not need to be flawless. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *see Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are.") (emphasis in original).  "Only when an ALJ's assessment lacks any explanation or support . . . will [the court] declare it to be patently wrong." *Jessica K. v. Saul*, No. 19-CV-4380, 2020 WL 4015330, at *8 (N.D. Ill. July 16, 2020) (quoting *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008)).

18

Moreover, the ALJ did consider a possible explanation for Benito's lack of treatment when he considered Benito's reports that his psychological symptoms were improving with his medication. In *Deborah M. v. Saul,* the Seventh Circuit found that the ALJ properly considered the claimant's possible reason for failing to seek treatment because in a prior paragraph of the decision, the ALJ pointed out that the claimant reported that she was doing well, that she denied having weakness, dizziness, shortness of breath, or chest pain, and that she had normal muscle strength and tone. 994 F.3d at 790. Here, a couple of sentences prior to his statement that Benito did not seek any significant treatment for his mental impairments in the second half of 2018, the ALJ considered that Benito's medications were improving his symptoms. (R. 29). Similar to *Deborah,* the ALJ here also considered a possible explanation for Benito's gap in mental health treatment. Thus, as stated earlier, the ALJ did not err in considering Benito's course of treatment, and although Benito does not identity any good reason for his lack of treatment that the ALJ should have considered, the ALJ did consider how Benito's medication might have influenced his lack of mental health treatment in the second half of 2018.

Next, Benito argues that the ALJ erroneously considered his daily activities as support for a finding that he can perform ongoing and continuous work. Doc. [28] at 14-15. As a general matter, the Seventh Circuit cautions against an ALJ equating the ability to perform certain daily activities with the ability to work full-time. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Contrary to Benito's characterization, however, the ALJ did not discuss his daily activities to demonstrate that Benito has the ability to work full-time. Instead, the ALJ stated the exact opposite. The ALJ considered that Benito can perform volunteer activities where he watches small children, that he is able to use public transportation, that he can teach children how to fish, that he can go to amusement parks, that he can participate in after school activities, and that he can spend

19

time in public with friends. (R. 30). Following the ALJ's statement of Benito's activities, the ALJ noted that he did not consider these activities to be conclusive evidence that the claimant can sustain the demands of full-time work. *Id.* Rather, the ALJ stated that Benito's activities in combination with the objective evidence and the claimant's course of treatment, demonstrate an ability to concentrate on simple routine and repetitive tasks involving no fast-paced production requirements, simple work-related decisions, few workplace changes, and limited social interaction. *Id.* At no point did the ALJ equate his daily activities with an ability to work full-time. In sum, the Court concludes that the ALJ was not patently wrong in his consideration of Benito's course of treatment and daily activities in his evaluation of Benito's subjective symptoms.

## **CONCLUSION**

For the reasons set forth above, Benito's request for reversal and remand [28] is denied, the Acting Commissioner's motion for summary judgment [27] is granted, and the ALJ's decision is affirmed.

**SO ORDERED.**

Dated: July 20, 2022

_____

Sunil R. Harjani
United States Magistrate Judge